UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIE ROGERS,

    Plaintiff,

v.                                                       Case No. 8:17-cv-2935-T-AEP

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.
_____/

## **ORDER**

Plaintiff seeks judicial review of the denial of his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A. Procedural Background**

Plaintiff protectively filed an application for DIB and SSI (Tr. 224-48). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 139-63). Plaintiff then requested an administrative hearing (Tr. 164-65). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 60-89). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 7-22). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1964, claimed disability beginning June 15, 2008 (Tr. 236). Plaintiff obtained less than a high school education (Tr. 283). Plaintiff's past relevant work experience included work as a truck driver helper and construction worker II (Tr. 84-85, 283). Plaintiff alleged disability due to back problems and later added poor eyesight and pain in his hands, legs, and lower back (Tr. 282, 291).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through September 30, 2014 and that Plaintiff had not engaged in substantial gainful activity since June 15, 2008, the alleged onset date (Tr. 12). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: lumbago and arthralgia of the knees (Tr. 12). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except that Plaintiff could not kneel, crawl, or climb ladders and scaffolds; could occasionally climb ramps and stairs; could occasionally stoop and crouch; could not work at unprotected heights, work around hazardous moving mechanical parts, or operate a motor vehicle; and could have no exposure to extreme heat (Tr. 14). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 15).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 17). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a cleaner/housekeeper; sorter of agricultural produce, shoe packer, and packaging line worker (Tr. 17-18, 86). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 18).

**II.**

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.[1] If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in

---

[1] The cited references to the regulations pertain to those in effect at the time the decision was rendered on August 31, 2016.

substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether

the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**III.**

Plaintiff argues that the ALJ erred by (1) failing to consider all of Plaintiff's impairments and their effect on Plaintiff's RFC and (2) failing to fully and fairly develop the record. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

**A. RFC**

Plaintiff contends that the ALJ failed to properly consider Plaintiff's visual impairment, high blood pressure, and diabetes or to consider their combined effect upon Plaintiff's RFC. As the decision reflects, however, the ALJ considered Plaintiff's impairments throughout the sequential analysis, including steps two through four (Tr. 12-17). Initially, step two operates as a threshold inquiry. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853 (11th Cir. 2013) (*per curiam*). At step two of the sequential evaluation process, a claimant must show that he or she suffers from an impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521, 416.920(a)(4)(ii), 416.921. A claimant need show only that his or her impairment is not so slight and its effect is not so minimal that it would clearly not be expected to interfere with his or her ability to work. *McDaniel*, 800 F.2d at 1031; *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality[,]" however. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th

Cir. 1986). In other words, an impairment or combination of impairments is not severe where it does not significantly limit the claimant's physical or mental ability to perform basic work activities. *Turner v. Comm'r of Soc. Sec.*, 182 F. App'x 946, 948 (11th Cir. 2006) (*per curiam*) (citations omitted); 20 C.F.R. §§ 404.1521, 416.921.

Notably, however, the finding of *any* severe impairment, whether or not it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (citations omitted); *see Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) (*per curiam*) ("[T]he ALJ determined at step two that at least one severe impairment existed; the threshold inquiry at step two therefore was satisfied); *see Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010) (*per curiam*) (noting that an ALJ's failure to identify an impairment as severe, where the ALJ found that the plaintiff suffered from at least one severe impairment, constituted harmless error and was, in fact, sufficient to meet the requirements of step two, and additionally noting that nothing requires the ALJ to identify, at step two, all of the impairments that could be considered severe). Here, the ALJ determined that Plaintiff had the following severe impairments: lumbago and arthralgia of the knees (Tr. 12). Accordingly, since the ALJ determined that Plaintiff suffered from severe impairments at step two, and thus proceeded beyond step two in the sequential analysis, any error in failing to find that Plaintiff suffered from other severe impairments is rendered harmless. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853-54 (11th Cir. 2013) (*per curiam*); *Packer*, 542 F. App'x at 892; *Heatly*, 382 F. App'x at 824-25.

Notwithstanding, the ALJ explicitly addressed Plaintiff's visual impairment, high blood pressure, and diabetes at step two (Tr. 12-13). In doing so, the ALJ discussed the medical evidence and opinion evidence of record and determined that Plaintiff's visual impairment, high

blood pressure, and diabetes constituted nonsevere impairments (Tr. 13). The ALJ therefore did not err at step two.

Regardless, as Plaintiff asserts, although an ALJ need not determine whether every alleged impairment is "severe" at step two, the ALJ must consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). The decision indicates that the ALJ considered Plaintiff's impairments beyond step two at steps three and four. At step three, the ALJ considers the medical severity of the claimant's impairments and determines whether the claimant has an impairment that meets or equals one of the Listings. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). In this instance, the ALJ considered whether Plaintiff's impairments, individually and in combination, met or equaled one of the Listings (Tr. 13-14). The ALJ stated that she reviewed all the evidence and concluded that Plaintiff's impairments, both singly and in combination, did not meet or equal the severity of one of the Listings, specifically Listings 1.02 or 1.04 relating to the joints and spine. As the Eleventh Circuit indicated in *Tuggerson-Brown*, such statement sufficed to indicate that the ALJ properly considered Plaintiff's impairments at step three. 572 F. App'x at 951-52.

After determining that Plaintiff's impairments did not meet or equal a Listing, the ALJ then moved on to step four, where she again considered Plaintiff's impairments, both singly and in combination (Tr. 14-17). Indeed, at step four, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the

ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison*, 814 F.2d at 588 (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996); SSR 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016) (as amended); 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3), 416.929(c)(3)(i)-(vii), 416.945(a)(3).

Notably, at step four, in addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929. To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see* 20 C.F.R. §§ 404.1529, 416.929. When the ALJ discredits the

claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225. A reviewing court will not disturb a clearly articulated credibility finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*) (citation omitted).

In considering Plaintiff's impairments at step four, the ALJ determined that such impairments, singly and in combination, limited Plaintiff to light work, except that Plaintiff could not kneel, crawl, or climb ladders and scaffolds; could occasionally climb ramps and stairs; could occasionally stoop and crouch; could not work at unprotected heights, work around hazardous moving mechanical parts, or operate a motor vehicle; and could have no exposure to extreme heat (Tr. 14). In support of the RFC determination, the ALJ discussed the medical evidence, the opinion evidence, Plaintiff's s subjective complaints, and Plaintiff's activities of daily living, none of which supported disabling limitations (Tr. 14-17). As the ALJ discussed, the medical evidence indicated diagnoses of a visual impairment, hypertension, and diabetes (Tr. 336-39, 345-48, 353-56). Plaintiff argues that the diagnoses of such impairments establishes a basis for a finding of greater limitations than those set forth by the ALJ in the RFC assessment. As the Commissioner asserts, however, the mere diagnosis of an impairment does not establish any corresponding work limitations. Namely, "[d]iagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). "Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of an impairment itself." *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) (*per curiam*). Furthermore, as noted, the severity of a medically ascertained impairment is not measured in terms of deviation from purely medical standards of bodily perfection or normality but rather in terms of its effect upon ability to work. *McCruter*, 791

F.2d at 1547. Accordingly, Plaintiff's diagnoses of a visual impairment, hypertension, and diabetes alone did not establish any limitations, nor did any of the medical sources identify any limitations stemming from any of those impairments (Tr. 336-39, 345-48, 353-56). Similarly, Plaintiff failed to illustrate any limitations he suffered as a result of such impairments.

Plaintiff also argues that the ALJ improperly considered the medical and opinion evidence. Notwithstanding Plaintiff's contention, the ALJ appropriately considered and discussed the medical and opinion evidence (Tr. 13, 15-16). As the ALJ discussed, despite alleged disabling back pain, Plaintiff only visited the emergency room once in 2013 for an exacerbation, was alert and in no acute distress, received medication, and was released (Tr. 16, 336-39). The ALJ also considered Plaintiff's April 2014 consultative physical examination with Dr. Charles Lebowitz, which indicated elevated blood pressure, poor vision (2/50 right eye and 20/200 left eye), bilateral cataracts, a pterygium on the left eye, report by Plaintiff of prior medication for non-insulin dependent diabetes mellitus, and essentially normal findings upon examination of the spine and musculoskeletal system, except for some minor limitations in range of motion with the shoulders, hands, and hips (Tr. 13, 16, 345-51). Dr. Lebowitz diagnosed Plaintiff with lower back pain, chronic in nature, but noted that Plaintiff could bend over at the waist and almost touch his toes; knee and hand pain, most likely degenerative joint disease in nature, but noted that Plaintiff could bend at the knees and experienced minimal impairment of the right hand from pain; poor vision with bilateral cataracts and a mass on the left pupil but no corrective lenses; probable untreated non-insulin dependent diabetes mellitus; and untreated hypertension, but Dr. Lebowitz did not identify any limitations stemming from any of those diagnoses (Tr. 347-48). In addition, the ALJ considered the July 2014 consultative visual examination performed by Dr. Perez, which indicated Plaintiff complained of a film over Plaintiff's eyes and cataracts for approximately 8 years and which included Dr. Perez's finding

of pterygium greater in the left eye and recommendation for excision of the pterygium (Tr. 13, 353-56). Dr. Perez also noted a discrepancy between Plaintiff's visual fields (Tr. 354). Like Dr. Lebowitz, however, Dr. Perez offered no limitations upon Plaintiff's ability to function or to work as a result of such findings (Tr. 353-56).

Plaintiff's primary point of contention relates to the ALJ's consideration of the opinions of Dr. P.S. Krishnamurthy (*see* Tr. 16, 118-33). Dr. Krishnamurthy initially opined in July 2014 that insufficient evidence appeared in the record to determine whether Plaintiff's impairments were severe (Tr. 122). Following that, in August 2014, a report of contact from a representative at the Social Security Administration's district office indicated that Dr. Perez reported that Plaintiff's best corrected visual acuity was 20/80 in the right eye and 20/200 in the left eye, Plaintiff's lenses were normal, and, as far as a noted visual field discrepancy, Dr. Perez felt that Plaintiff faked the degree of limitation during the visual field testing (Tr. 298). Subsequently, in September 2014, Dr. Krishnamurthy opined that Plaintiff's impairments were nonsevere (Tr. 130). Dr. Krishnamurthy based his new opinion upon the same medical evidence but also referenced the August 2014 report of contact with Dr. Perez (Tr. 130).

In the decision, the ALJ addressed Dr. Krishnamurthy's opinions at step two and step four, finding:

> Consequently, the undersigned also finds these impairments nonsevere. In making this finding, the undersigned gives little weight to the State agency medical consultant[']s assessment dated July 25, 2014. This assessment documented that there was insufficient evidence to make a determination prior to the date last insured (DLI) of December 1, 2013. Of note, at the hearing level, a certified earnings query shows the claimant's DLI is September 30, 2014. It was noted that P.S. Krishnamurthy, M.D., also made the determination that cataracts and hypertension were severe impairments, which contradicts the assessment altogether. As for the untreated, non-insulin dependent diabetes mellitus, untreated, essential hypertension, pterygium, and left eye and bilateral cataracts, the record reflects no treatment or worsening for these alleged impairments and thus, the undersigned finds these are nonsevere.
>
> \*\*\*

> On July 25, 2014, the State agency's medical consultant, Dr. Krishnamurthy, found insufficient evidence to evaluate the claim prior to December 2013. On September 4, 2014, Dr. Krishnamurthy opined the claimant had no severe physical impairments with regards to the Title 16 application. The undersigned gives little weight to both of Dr. Krishnamurthy's opinions. Specifically, the evidence shows the claimant presented with an exacerbation of back pain. The claimant had left and right lateral tenderness and active muscle spasm. However, intake notes show he was alert and in no acute distress, his tenderness was only mild, and strength of the upper and lower extremities was 5/5.

(Tr. 13, 16) (internal citations omitted). Plaintiff contends that the ALJ erred because Dr. Krishnamurthy's opinions were not supported by the evidence, yet that is essentially what the ALJ concluded. Indeed, the ALJ afforded little weight to both of Dr. Krishnamurthy's opinions. Plaintiff fails to demonstrate how the ALJ erred when the ALJ's finding comports with Plaintiff's argument that Dr. Krishnamurthy's opinions should not receive great weight as they conflict with the evidence of record.

Plaintiff further contends that the ALJ improperly considered Plaintiff's activities of daily living in addressing Plaintiff's subjective complaints and determining Plaintiff's RFC. In evaluating and discrediting a claimant's complaints, however, the ALJ may consider the claimant's daily activities. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Conner v. Astrue*, 415 F. App'x 992, 995 (11th Cir. 2011) ("A claimant's daily activities may be considered in evaluating and discrediting a claimant's subjective complaints" (citation omitted)); *cf. Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987) (considering the ability to perform such tasks as dialing a phone, writing, opening a door, buttoning, and unbuttoning in finding that a plaintiff retained the ability to perform sedentary work); *but see Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) (stating "[n]or do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by [the claimant's] treating physicians."). As Plaintiff notes, participation in everyday activities of short duration, such as housework, will not necessarily

disqualify a claimant from disability. *Lewis*, 125 F.3d at 1441. Notwithstanding, an ALJ is not precluded from considering a claimant's daily activities at all in determining credibility. *Hoffman v. Astrue*, 259 F. App'x 213, 219 (11th Cir. 2007) (*per curiam*). Here, the ALJ pointed to the fact that Plaintiff maintained a hardship license to drive after his license was suspended and could drive to and from the store or to interviews and work, walked and exercised daily, could wash cars occasionally to make some money, could sometimes cook small meals, and could sometimes walk and play with his grandchildren (Tr. 15, 67-79). Although, standing alone, Plaintiff's activities of daily living might not suffice as a basis for discrediting Plaintiff's subjective complaints, the ALJ properly considered such activities in conjunction with the medical evidence, opinion evidence, and other evidence of record in correctly determining that Plaintiff was not as limited as alleged.

Further, as Plaintiff contends, the ALJ also mentioned Plaintiff's lack of treatment as one of several bases for finding that Plaintiff was not as limited as alleged (Tr. 14-16). Indeed, under the regulations, an ALJ may consider treatment, other than medication, a claimant receives or has received for relief of pain or other symptoms. 20 C.F.R. §§ 404.1529(3)(c)(v), 416.929(3)(c)(v). Here, the record indicates sparse medical treatment for Plaintiff's impairments, which necessarily undermines Plaintiff's statements regarding disabling limitations. Despite Plaintiff's contention of error, and as the foregoing indicates, the ALJ did not rely solely upon Plaintiff's lack of treatment in reaching the conclusion that Plaintiff's treatment history did not support his alleged disabling impairments and limitations, and, further the ALJ did not conclude that Plaintiff's noncompliance with treatment was the basis for a finding of no disability or that treatment would have restored Plaintiff's ability to work if Plaintiff could afford it. *See* 20 C.F.R. §§ 404.1530(a) & (b), 416.930(a) & (b); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) ("We have held that refusal to follow

prescribed medical treatment without a good reason will preclude a finding of disability, and poverty excuses noncompliance. Additionally, when an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment") (internal citations and quotation marks omitted); *see Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1998). Although Plaintiff testified that he could not afford eye surgery (Tr. 76), nothing in the record, including Dr. Perez's findings or report, indicates that such surgery was necessary for Plaintiff to perform work activities, specifically those falling within the ALJ's RFC assessment.

Accordingly, based on the foregoing, the ALJ properly considered Plaintiff's impairments throughout the sequential analysis. The ALJ correctly considered Plaintiff's impairments and limitations, both singly and in combination, at steps two, three, and four. The ALJ applied the correct legal standards, and the record supports the ALJ's decision.

### B. Developing the Record

Plaintiff additionally argues that the ALJ failed to properly develop a full and fair record. Essentially, Plaintiff asserts that the ALJ failed to fully develop the record because the ALJ should have obtained additional medical records. According to Plaintiff, such failure violates Plaintiff's procedural due process rights thereby warranting remand.

Even though Social Security proceedings are inquisitorial rather than adversarial in nature, claimants must establish their eligibility for benefits. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007); 20 C.F.R. §§ 404.1512(a), 416.912(a). During the administrative process, therefore, a claimant must inform the Social Security Administration about or submit all evidence known to the claimant relating to whether the claimant is blind or disabled. 20 C.F.R. §§ 404.1512(c), 416.912(c). Though the claimant bears the burden of

providing medical evidence showing she is disabled, the ALJ is charged with developing a full and fair record. *Ellison*, 355 F.3d at 1276. The ALJ has this basic obligation to develop a full and fair record without regard for whether the claimant is represented by counsel. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). When the plaintiff demonstrates that the record reveals evidentiary gaps which result in unfairness or "clear prejudice," remand is warranted. *Id.* at 935; *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("Remand for further factual development of the record before the ALJ is appropriate where the record reveals evidentiary gaps which result in unfairness or clear prejudice.") (quotation and citation omitted); *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) ("However, there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record") (citation omitted).

Before determining whether a claimant is or is not disabled, the Social Security Administration will develop the claimant's complete medical history for at least the 12 months preceding the month in which the claimant files an application unless there is a reason to believe that development of an earlier period is necessary or unless the claimant indicates that his or her disability began less than 12 months before he or she filed an application. 20 C.F.R. §§ 404.1512(d), 416.912(d). As the Eleventh Circuit concluded, however, an ALJ is "in no way bound to develop the medical record" for the period beyond the 12 months prior to the application for benefits. *Ellison*, 355 F.3d at 1276. Here, Plaintiff protectively filed his applications for DIB and SSI on January 13, 2014 (Tr. 234-48). The record reflects that the ALJ obtained emergency department records from December 2013 (Tr. 335-39) and ordered consultative examinations, each of which occurred after the application date (Tr. 345-51, 353-56). Plaintiff fails to point to any other evidence that the ALJ should have obtained for the

period 12 months prior to Plaintiff's applications for benefits, as Plaintiff failed to submit additional records at any time during the administrative process, including to either the Appeals Council or this Court (Tr. 1-5).

Instead, Plaintiff points to an undated form in which Plaintiff indicated that he treated at Tampa Family Health Center, University of South Florida Health, and St. Joseph's Hospital for arthritis, a learning disability, hip pain, and neck, back, and leg injuries since January 1, 2014 (Tr. 322). That form, by itself, does little to bolster Plaintiff's position. Throughout the administrative process, the Social Security Administration reminded Plaintiff and his attorney of Plaintiff's duty to provide his medical records and provided each of them with multiple opportunities to do so. For example, after Plaintiff requested an administrative hearing, the Social Security Administration sent Plaintiff's attorney a letter on September 14, 2015 acknowledging that the attorney represented Plaintiff and indicating that it was Plaintiff's responsibility to provide medical evidence showing that he had an impairment and the severity of the impairment during the time he alleged disability (Tr. 307). The letter further stated that Plaintiff's attorney should submit, among other things, "All medical records *(not duplicates)* from one year prior to the alleged onset date to the present and any other relevant medical, school or other records not already in file." (Tr. 307) (emphasis in original). Plaintiff failed to provide any purported missing records prior to the administrative hearing.

Following that, during the administrative hearing, Plaintiff's attorney referenced missing medical records (Tr. 63). Though the ALJ offered Plaintiff's attorney two weeks to obtain and provide the missing records (Tr. 63, 87-88), neither Plaintiff nor his attorney provided any outstanding records. Plaintiff received yet another reminder and opportunity to provide outstanding records upon request for review of the ALJ's decision by the Appeals Council. Indeed, the request for review stated:

> If you have additional evidence that relates to the period on or before the date of the hearing decision, you must inform the Appeals Council about it or submit it. If you have a representative, then your representative must help you obtain the evidence unless the evidence falls under an exception. You may also submit any other additional evidence to the Appeals Council. If you need additional time to submit evidence or legal argument, you must request an extension of time in writing now. This will ensure that the Appeals Council has the opportunity to consider the additional evidence before taking its action. If you submit neither evidence nor legal argument now or within any extension of time the Appeals Council Grants, the Appeals Council will take its action based on the evidence currently in your file.

(Tr. 223). Plaintiff's attorney submitted a brief, citing several bases for the appeal of the ALJ's decision (Tr. 324-31). Notably absent from Plaintiff's brief were any medical records in support of such appeal. Likewise, in appealing the decision to the district court, Plaintiff failed to provide any evidence of missing records (*see* Doc. 1 & 17). Despite several opportunities to provide the alleged missing records, Plaintiff simply failed to produce anything to demonstrate that such records exist and, to the extent the records exist, the records support a finding of disability.

The burden to demonstrate disability and to provide medical records remained upon Plaintiff. 20 C.F.R. §§ 404.1512 (a) & (c), 416.912 (a) & (c). Plaintiff simply failed to meet that burden, despite numerous opportunities throughout the administrative process to do so. The ALJ did not err in developing the record, as she obtained records during the period 12 months prior to the application date and subsequently ordered consultative examinations, and Plaintiff suffered no prejudice or violation of his due process rights as a result of any error or omission by the ALJ. Accordingly, remand is unwarranted.

**IV.**

After consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 25th day of March, 2019.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record